UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:23-CR-36-TAV-DCP-6 ) |
| COREY D. FOSTER, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendant's Motion for Revocation of Detention Order [Doc. 33]. Defendant seeks revocation of the order of detention issued by United States Magistrate Judge Debra C. Poplin [Doc. 31]. The government filed a response [Doc. 37]. For the reasons discussed below, defendant's motion [Doc. 33] is **DENIED**.

**I.  Background**

The indictment in this case charges defendant with conspiracy to distribute 400 grams or more of fentanyl, a quantity of acetyl fentanyl, a quantity heroin, and a quantity of hydromorphone, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C) [SEALED Doc. 3, pp. 1–2]. On May 31, 2023, the parties appeared before Judge Poplin for a detention hearing [Doc. 30]. Judge Poplin heard argument by counsel and took the matter under advisement [*Id.*].

On June 2, 2023, Judge Poplin issued an order finding that the Pretrial Report, proffers, exhibits, testimony, and arguments presented establish by clear and convincing

evidence that defendant poses a risk of danger to the community and by a preponderance of the evidence that defendant poses a risk of flight [Doc. 31, p. 3]. She also considered the conditions proposed by defendant along with other available conditions and found that there is no condition or combination of conditions that will reasonably assure the safety of the community or defendant's appearance as required if released on conditions [*Id.*].

As an initial matter, Judge Poplin found that a presumption in favor of detention applies in this case because defendant is charged with an offense under the Controlled Substances Act, for which a maximum term of imprisonment of 10 years or more is prescribed [Doc. 31-1, p. 1]. *See* 18 U.S.C. § 3142(e)(3)(A). Judge Poplin next found that defendant had "minimally rebutted" the presumption by presenting evidence of work available to him as an HVAC contractor, his attendance at all state court appearances since his arrest, his lack of any additional criminal violations since his arrest, and his proposed third-party custodian, Stephanie Johnson ("Johnson") [*Id.*]. However, Judge Poplin noted that she was permitted to still consider the presumption in her ultimate decision on detention.

Turning to the § 3142(g) factors, Judge Poplin first found that the nature and circumstances of the offense favor detention. She explained that the charged offense involves controlled substances, and the government proffered that defendant was involved in six controlled purchases of hydromorphone over a period of several months, at least four at which he was present and two of which he helped facilitate over the phone. Defendant

2

was also found in possession of 21 tablets of hydromorphone and $280 in cash upon his arrest in March 2020.

Judge Poplin next considered the weight of the evidence against defendant, finding that this factor also favors detention. She noted that defendant's conduct indicates that he has been an active participant in the drug trade, and his participation in drug trafficking extends back several years, as he has had at least seven drug-related convictions and arrests from 2003 to 2017. While Judge Poplin considered defendant's proffer that he had attended every state court hearing on related charges, she also found that defendant has an active violation of probation warrant for absconding, effective July 21, 2017. In addition, Judge Poplin considered defendant's proffer that he has paid all fines applicable to that case and that the warrant is non-extraditable, but she stated that the fact remains that there is an active warrant from six years ago that defendant has failed to fully rectify. Judge Poplin further noted that while defendant has stated that he has resided in the Eastern District of Tennessee for the past six years, his representations do not comport with the testimony of Johnson. Thus, Judge Poplin found that the weight of the evidence of defendant's dangerousness and risk of flight favor detention.

Judge Poplin then analyzed the history and characteristics of defendant, also finding that they favor detention. She noted that defendant appears to have some ties to the Eastern District of Tennessee based on his representations that he has lived in Tennessee since 2017. However, she noted defendant's transitory nature, as Johnson testified that in the weeks leading up to defendant's arrest, he suddenly disappeared. Judge Poplin further

3

considered defendant's statements that he first used marijuana in middle school and that he continues to use it on a daily basis, with his last use occurring prior to his initial interview with the United States Probation Office ("USPO").

Judge Poplin next analyzed defendant's criminal history, which includes five drug-related convictions between 2003 and 2017, as well as three additional drug-related arrests during that time. Defendant also has a 2003 conviction for stolen property, arrests from 2008, 2011, and 2013 for an unknown felony, a felony weapons offense, and an unknown misdemeanor, respectively, and a 2017 domestic assault conviction. As already noted, he also has an active violation of probation warrant from Michigan that was issued in July 2017 stemming from one of his drug-related convictions. Moreover, Judge Poplin mentioned evidence of defendant's inconsistent employment history based on testimony that he worked for Door Dash, in landscaping, and/or for an HVAC contractor. Thus, Judge Poplin found that defendant's history and characteristics weigh in favor of detention.

As to the final § 3142(g) factor, Judge Poplin analyzed the nature and seriousness of the danger to any person or the community that would be posed by defendant's release. She found that defendant's danger to the community lies in his connection to drug trafficking. Specifically, she indicated that defendant's continued involvement in the drug trade, despite his multiple convictions—some of which resulted in incarceration—and failed attempts at drug treatment, demonstrate defendant is not deterred from continuing to place others in danger.

Finally, Judge Poplin considered defendant's proposed conditions of release, which include living with Johnson as a third-party custodian, working as an HVAC employee, and submitting to drug testing and substance abuse treatment. Judge Poplin found that Johnson would not be a suitable third-party custodian, as Johnson testified that she works outside the home for approximately 11 hours per day, five days per week. In addition, the USPO reported that Johnson has several previous arrests as well as 21 failures-to-satisfy-citations and eight failures-to-appear related to her 2013 revoked license. Finally, while Johnson testified that defendant had been living with her in the weeks leading up to his arrest, defendant omitted any reference to Johnson in his pretrial interview with the USPO. Judge Poplin noted that defendant's other proposed conditions of release would also not sufficiently mitigate his danger or risk of flight, as he would likely be without supervision for significant periods of time. Accordingly, Judge Poplin ordered defendant detained.

## II. Analysis

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). "A district court reviews *de novo* a magistrate judge's order of pretrial detention." *United States v. Blair*, No. 3:15-CR-56, 2015 WL 3486026, at *1 (E.D. Tenn. June 2, 2015).

Under § 3142(e)(1), if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of

5

the person before trial." "The government must prove risk of flight by a preponderance of the evidence" and "dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). As the Sixth Circuit has stated, "the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010).

"[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," the judicial officer must consider:

> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including[:] (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . . (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C § 3142(g). However, according to § 3142(e)(3)(A):

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed[:] (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)[.]

Application of this rebuttable presumption shifts the burden of production to the defendant; however, the government retains the burden of persuasion. *Stone*, 608 F.3d at 945. The

6

defendant satisfies his burden of production by presenting evidence that "he does not pose a danger to the community or a risk of flight." *Id.* (internal quotation marks omitted).

After an independent, *de novo* review, the Court agrees with Judge Poplin that pretrial detention is appropriate. As a preliminary matter, the Court finds that the rebuttable presumption of detention applies. As stated, a grand jury has charged defendant with conspiracy to distribute 400 grams or more of fentanyl, a quantity of acetyl fentanyl, a quantity heroin, and a quantity of hydromorphone, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C) [SEALED Doc. 3, pp. 1–2]. Thus, probable cause exists to believe defendant has committed an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act. *See* 18 U.S.C. § 3142(e)(3)(A); 21 U.S.C. § 841(b)(1)(C); *Hinton*, 113 F. App'x at 77 ("The indictment is sufficient to support a finding of probable cause triggering the rebuttable presumption.").[1]

While the rebuttable presumption applies, the Court finds defendant has adduced sufficient evidence to rebut it. Defendant proffered that if released, he has employment available to him with Whaley Mechanical, which is an HVAC contractor in Sevier County, Tennessee. He also proffered by way of a letter from his attorney who represents him on related state charges that he has appeared at all his state court proceedings and remained in

---

[1] In his motion, defendant makes statements that the evidence proffered by the government at the detention hearing included evidence of drug transactions by defendant occurring over three years ago that involved only hydromorphone [Doc. 33, pp. 1–2]. However, the evidence proffered at the detention hearing does not overcome the fact that defendant was indicted by a grand jury for an offense involving more than hydromorphone.

constant communication with his state attorney. In addition, he has not incurred any new charges or arrests from March 2020 to his arrest in this case. However, although defendant has rebutted the presumption, the Court is still permitted to consider the presumption in its ultimate decision on detention. *See Hinton*, 113 F. App'x at 78; *see also Stone*, 608 F.3d at 945 ("[T]he presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

While defendant has rebutted the presumption of detention under § 3142(e)(3)(A), the Court finds that the government nevertheless has satisfied its burden of demonstrating that no conditions or combination of conditions would reasonably assure the safety of the community and the appearance of defendant at future proceedings.

First, the nature and circumstances of defendant's offense support pretrial detention. Defendant is charged in Count I of the indictment with conspiring with others to distribute 400 grams or more of fentanyl, a quantity of acetyl fentanyl, a quantity heroin, and a quantity of hydromorphone [SEALED Doc. 3, pp. 1–2]. *See* § 3142(g)(1) (directing the judicial officer to consider whether the offense involves a controlled substance). As the government points out in its response, defendant's culpability is lower compared to his co-defendants who have been charged with additional offenses [Doc. 37, p. 2]. However, this fact does not negate the individual culpability of defendant if the allegations in Count I are proven true, as the drug conspiracy allegations against him are serious. *See Stone*, 608 F.3d at 947 n.6 ("[D]rug trafficking is a serious offense that, in itself, poses a danger

8

to the community."). In addition, the government proffered at the detention hearing that defendant was involved in six controlled purchases of hydromorphone over a period of several months, and upon his arrest in March 2020, he was found in possession of 21 tablets of hydromorphone and $280 in cash. Thus, taking all this information into account, the nature and circumstances of the offense favor detention.

Second, the weight of the evidence against defendant also supports detention. This factor goes toward the weight of the evidence of defendant's dangerousness and his risk of flight. *See Stone*, 608 F.3d at 948; *United States v. Beard*, 528 F. Supp. 3d 764, 773 (N.D. Ohio 2021). First, the Sixth Circuit has stated, "[O]ur Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Stone*, 608 F.3d at 947 n.6. In addition to the instant offense, defendant's criminal history reveals that he has had a connection to drug trafficking long before his arrest in this case, as the Pretrial Services Report indicates that he has had at least seven drug-related convictions and arrests from 2003 to 2017, including a 2003 conviction for delivery or manufacturing of cocaine, heroin, or other narcotics, and a 2017 arrest for sale or possession of Schedule II drugs. *See United States v. Tolbert*, Nos. 3:09-CR-56, 3:10-CR-30, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) ("[T]he court may consider evidence of the defendant's past or present wrongful conduct as indicative of a defendant's dangerous tendencies, regardless of whether such conduct resulted in a state or federal prosecution.").

Moreover, the Court acknowledges the proffer from defendant's state attorney that defendant has not missed any state court proceedings as some evidence that defendant is not a flight risk. However, the Court also takes into account defendant's pending probation revocation warrant for absconding in Wayne County, Michigan. The Court recognizes that this warrant has been pending since 2017, that it is a non-extraditable warrant, and that defendant has paid all fines applicable to that case. However, the fact remains that an active violation of probation warrant still exists. *See United States v. McCollum*, No.: 3:21-CR-35, 2021 WL 4468937, at *3 (E.D. Tenn. Sept. 29, 2021) (where the Court acknowledged the defendant's prior probation violation and took the unclear circumstances surrounding that violation into consideration when affirming the magistrate judge's order of detention).

In addition, Johnson testified that in the weeks leading up to defendant's arrest, he suddenly disappeared, which also lends support to the conclusion that defendant presents a flight risk. Moreover, despite defendant's ties to Tennessee, he told the USPO that he has lived at various hotels and with friends since January 2023, and the testimony surrounding his employment was unclear as to whether he worked for Door Dash, for an HVAC contractor, or as a landscaper. This evidence demonstrates instability as to defendant's living arrangements and employment, thereby supporting that he is a flight risk. Thus, taking all these circumstances into account, the weight of the evidence against defendant favors detention.

Third, the Court finds that defendant's history and characteristics support pretrial detention. The Court has already noted the uncertainty surrounding defendant's living arrangements and employment, neither of which support release. In addition, the Court has reviewed defendant's criminal history, which dates back as far as 2003 and includes multiple drug-related convictions and arrests. He also has a conviction for stolen property, a domestic assault conviction, and arrests for an unknown felony, a felony weapons offense, and an unknown misdemeanor. Thus, defendant's criminal history does not support release. The Court further notes defendant's admission to daily drug use, stating that he first used marijuana in middle school and his last use was the day before his initial interview with the USPO. Defendant's recent drug use was confirmed by the drug screen at the time of his arrest, which tested presumptively positive for marijuana and fentanyl. Therefore, defendant's history and characteristics favor detention.

Fourth, the Court considers the nature and seriousness of the danger to any person or the community that would be posed by defendant's release. With defendant's criminal background in mind, the Court cannot ignore the conclusion that defendant poses a risk of danger to the community if released. As has been repeatedly emphasized, defendant's criminal history spans from as early as 2003 to as recently as 2017, with convictions and arrests for multiple drug-related offenses. *See Stone*, 608 F.3d at 947 n.6 ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community."); *United States v. Hernandez*, No. 1:02–CR–006, 2002 WL 1377911, at *3 (E.D. Tenn. Feb. 27, 2002) ("The risk of continued drug-trafficking while released on bail constitutes a

11

Case 3:23-cr-00036-TAV-DCP   Document 43   Filed 07/05/23   Page 11 of 14   PageID #: 192

significant danger to the safety of the community."). In addition, defendant has a prior conviction for domestic assault and a charge for assaulting a police officer, both of which demonstrate a danger to persons in the community if defendant is released. Thus, the nature and seriousness of the danger to any person or the community favors detention.

Finally, the Court considers defendant's proposed conditions of release. Specifically, defendant identifies Johnson as a potential third-party custodian. He states that Johnson does not allow anyone to smoke cigarettes in her house, does not allow any drug use, has never seen defendant use drugs, and would report any of defendant's violations of release conditions. However, the fact that Johnson has never seen defendant use drugs is more concerning than comforting to the Court. As mentioned previously, defendant admitted to daily drug use, and his drug screen at the time of his arrest tested presumptively positive for marijuana and fentanyl. In addition, Johnson testified that although defendant was residing with her in the weeks leading up to his arrest, defendant suddenly disappeared. Both of these pieces of information demonstrate that Johnson lacks the ability to keep track of defendant's activities and whereabouts, which is a basic responsibility required of third-party custodians.

Moreover, Johnson testified that she works outside the home for approximately 11 hours per day, five days per week, meaning that she would be unavailable for a significant period of time throughout the week to supervise defendant. Thus, it is unlikely Johnson would be able to discover or report violations of conditions by defendant, which

12

supports the conclusion that she would not be a suitable third-party custodian. Similarly, the Court is not satisfied, based on defendant's background and characteristics, that his additional proposed conditions of home confinement, drug testing, drug rehabilitation or counseling, and full-time employment are adequate in this case, especially considering he would be without supervision for a majority of the time.

In support of his motion, defendant points to his co-defendant's pretrial release [Doc. 33, p. 4]. He states that his co-defendant was released despite the fact that he resides in Michigan, has no third-party custodian, and was charged with three counts in the indictment. In addition, he points to the mandatory minimums and statutory maximums that apply to his charged offense versus his co-defendant's charged offenses. As the Court previously stated, the drug conspiracy allegations against defendant in Count I are serious and do not negate the individual culpability of defendant if the allegations are proven true. In addition, the Court must judge defendant's eligibility for release based on the § 3142(g) factors as they apply to the particular facts and circumstances surrounding the individual defendant. *See Stone*, 608 F.3d at 946 ("[E]ach defendant is entitled to an individualized determination of bail eligibility."). Based on the evidence before the Court, the facts and circumstances in defendant's case do not support pretrial release, and the release of defendant's co-defendant does not change the Court's conclusion.

### III. Conclusion

For the foregoing reasons, the government has established by clear and convincing evidence that defendant poses a risk of danger to the community and by a preponderance

13

of the evidence that defendant poses a risk of flight. Accordingly, defendant's Motion for Revocation of Detention Order [Doc. 33] is hereby **DENIED**. Defendant shall remain detained pending trial.

    IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE